**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KENDRICK CRAWFORD, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:17-cv-00655-GMN-PAL |
| vs. | ) |
| | ) **ORDER** |
| NEVADA DEPARTMENT OF TRANSPORTATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 30), filed by Defendants Nevada Department of Transportation ("NDOT"), Wilson Marshall ("Marshall"), and Sonnie Braih ("Braih") (collectively "Defendants"). Plaintiff Kendrick Crawford ("Plaintiff") filed a Response, (ECF No. 35), and Defendants filed a Reply, (ECF No. 42). For the reasons discussed below, Defendants' Motion for Summary Judgment is **DENIED**.

### I. BACKGROUND

This civil rights action arises out of Defendants' alleged discrimination and retaliation against Plaintiff in violation of state and federal law. (*See generally* Compl., Ex. B to Pet. for Removal, ECF No. 1-2). From June to October of 2015, Plaintiff worked for NDOT as a compliance auditor with the Civil Rights Division (the "Division"). (*See* Employment Offer, ECF No. 30-4); (Pl.'s Dep. 22:13–14, ECF No. 30-3). Plaintiff's job responsibilities included reviewing business' applications for certification under the Nevada Disadvantaged Business Enterprise ("DBE") program and performing contract compliance support duties, such as setting DBE goals for projects. (*See* Pl.'s Dep. 20:2–3, ECF No. 30-7).

Plaintiff was initially supervised by Braih, the Division's administrator, who is an African-American male. (Braih Decl. ¶¶ 1, 4–5, ECF No. 30-6). Braih provided DBE goal-

setting training to Plaintiff and Terry L., a white female co-worker hired alongside Plaintiff as an audit compliance investigator. (Braih Decl. ¶ 13). Braih declares that he initially observed that Plaintiff was disinterested in his training and that Plaintiff would not provide timely status updates for project assignments. (*Id.* at ¶ 5).

After Plaintiff's first month of employment, Braih assigned Marshall, the Division's chief compliance auditor, to supervise Plaintiff and Terry L. (Marshall Decl. ¶¶ 1, 3, ECF No. 30-10). Marshall states that he was concerned about Plaintiff's work performance because Plaintiff refused to perform all the duties of his position, disrespected Marshall, and had trouble completing basic tasks. (*Id.* ¶ 5).

In August, Marshall commented to Plaintiff that DBEs remind Marshall of affirmative action programs that he observed working with the Bureau of Prisons, where women and minorities would fail because they lack the requisite knowledge and skill. (Pl.'s Answer to Interrog. No. 3, ECF No. 35-5). On September 8, 2015, Marshall threated Plaintiff and another employee with negative performance evaluations if they failed to relay to him anything Braih told them. (*Id.*). A couple days later, Plaintiff asked Marshall if he would be driving to a work-related event and Marshall replied, "You used to be the cab driver; why don't you drive, boy?" (*Id.*).

On September 11, 2015, Plaintiff approached Braih with concerns about Marshall. (Braih Decl. ¶ 8). Braih and Plaintiff dispute whether the subject of racial discrimination was broached at that meeting. (*Id.*); (Pl.'s Decl. ¶ 15, ECF No. 35-1). On September 14, 2015, at the Division's weekly meeting, Marshall discussed administrative support, training, and staffing schedules. (Marshall Correspondence, ECF No. 30-22). Marshall also discussed assigning some duties to Plaintiff, and Plaintiff expressed concern about handling more tasks. (Terry L. Correspondence, ECF No. 30-23); (Pl.'s Dep. 35:10–15, ECF No. 30-24). Marshall told Plaintiff he was not processing enough DBE certifications and should be able to process

more. (Grievance Letters, Ex. 25 to MSJ, ECF No. 30-25). During the meeting, Marshall stated that he felt Plaintiff was being disrespectful. (Marshall Correspondence, ECF No. 30-22). The exchange became heated, and according to Terry L., Plaintiff employed sarcasm and called Marshall a liar. (Terry L. Correspondence, ECF No. 30-23).

Immediately after the Division's weekly meeting, Plaintiff spoke to Braih about the exchange that occurred. (Braih Decl. ¶ 9). Braih represented that he would consult NDOT's human resources department to initiate an investigation. (Pl.'s Decl. ¶ 16, ECF No. 35-1). According to Plaintiff, he found out later that human resources never opened an investigation into the matter. (*Id.*). Braih declares that he did tell human resources about the exchange and also conducted his own investigation, finding that Marshall did not act inappropriately. (*Id.*).

Braih requested written statements from Marshall, Terry L., and Plaintiff, concerning the heated exchange at the Division's meeting the prior day. (Braih Decl. ¶ 9). Plaintiff submitted a series of written correspondence to Braih, including letters entitled "Grievance Letter," "Grievance Letter–Revision," and "Unprofessional Office Encounters," (collectively "Grievance Letters"), (ECF No. 30-25). Each of the letters complain about Marshall's competence, attitude, and apparent dissatisfaction with Plaintiff. (*Id.*) The Unprofessional Officer Encounters letter begins with Marshall's statement about affirmative action and references that Plaintiff brought this concern to Braih's attention three days earlier. (*Id.*).

On September 16, 2015, Braih held a Division meeting to discuss workload and Plaintiff's duties. (*Id.* at ¶ 10). Plaintiff acknowledges that concerns over his duties and performance were discussed. (Pl.'s Dep. 56:6–12, ECF No. 30-31). During the meeting, Braih looked at Plaintiff and stated: "If anybody at this table feels overworked, you can leave." (*Id.* at 56:11–12).

On October 5, 2015, Braih provided Plaintiff written notice that he was terminated. (Termination Letter, ECF No. 30-34). The letter stated that Plaintiff was unwilling to accept

instruction or comments about his work and did not demonstrate the skills and professional qualities necessary to complete the requirements of the job. (*Id.*). According to Plaintiff, on the day he was terminated, Marshall remarked to Plaintiff, "this is why you people are so unqualified for these kinds of jobs." (Pl. Decl. ¶ 8, ECF No. 35-1).

Plaintiff filed his Complaint in state court on December 14, 2016, asserting the following causes of action arising from his termination from NDOT: (1) racial discrimination in violation of Title VII and NRS 613.330; (2) retaliation; (3) violation of 42 U.S.C. § 1983; and (4) violation of 42 U.S.C. § 1981. (*See* Compl. ¶¶ 11–49, ECF No. 1-2). Defendants subsequently removed the action to this Court, (ECF No. 1), and later filed the instant Motion for Summary Judgment on April 6, 2018, (ECF No. 30).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50

## III. DISCUSSION

Defendants move for summary judgment on Plaintiff's Title VII claim on the grounds that Plaintiff has failed to produce direct or circumstantial evidence of racial discrimination and cannot otherwise establish a prima facie case. (MSJ 12:21–24:4, ECF No. 30). Defendants further move for summary judgment on Plaintiff's retaliation claim, asserting that Plaintiff's Grievance Letters do not constitute protected activity, and in any event, the letters are unrelated to Plaintiff's ultimate termination. (*Id.* 24:5–30:19).

### A. Untimely Requests for Admissions

As a preliminary matter, Defendants request that the Court deem Plaintiff to have conclusively admitted all of Defendants' propounded requests for admission. (*Id.* 3:5 n.1). Plaintiff's counsel represents that the delay is due to Plaintiff's prior attorney's withdrawal and retention of Plaintiff's case file pending payment for services rendered. (*See* Hatfield Decl. ¶ 5, Ex. 3 to Pl.'s Resp., ECF No. 35-3).

Defendants served their requests for admission to Plaintiff on September 6, 2017. Two days later, Plaintiff's prior counsel moved to withdraw from representation, which the Court granted on September 11, 2017, (ECF Nos. 22, 23). Plaintiff's substitute counsel entered his appearance on November 8, 2017, after which the parties stipulated to extending the discovery deadlines. Following Judge Leen's grant of the parties' stipulation, Defendants' counsel served another copy of their requests for admission in addition to a letter discussing the status of the

outstanding discovery. (Ex. 2 to Def.'s MSJ). Plaintiff served Defendants with its response to the requests for admission on January 19, 2018.[1] (Hatfield Decl. ¶ 6).

Rule 36 of the Federal Rules of Civil Procedure permits a party to "serve on any other party a written request for the admission . . . of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or the application of law to fact." Fed. R. Civ. P. 36(a). The effect of the admission is such that "[a]ny matter admitted under this rule is conclusively established" unless the court grants a motion to waive or amend. Fed. R. Civ. P. 36(b). A matter is deemed admitted "unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed. R. Civ. P. 36(a).

In the Ninth Circuit, a request for withdrawal need not "be brought in a separate motion." *Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1185 (9th Cir. 2016). Furthermore, the Ninth Circuit has approved of construing oppositions to summary-judgment motions as motions to withdraw. *Whitsitt v. Club Resource Group*, 357 Fed. App'x 877, 878 (9th Cir. 2009) (holding district court did not abuse its discretion by construing opposition to motion for summary judgment as a motion to withdraw admissions under Rule 36); *Elements of Behavioral Health, Inc. v. Marcus*, 2017 WL 5634854 *4 (C.D. Cal. September 6, 2017).

A court may permit withdrawal or amendment if: (1) "if it would promote the presentation of the merits of the action"; and (2) "if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

---

[1] The parties appear to dispute whether Plaintiff sent the responses on January 19, or January 29, 2018. (*See* MSJ 3:5 n.1, ECF No. 30); (Hatfield Decl. ¶ 6, Ex. 3 to Pl.'s Resp., ECF No. 35-3).

The Court, in its discretion, finds good cause to permit Plaintiff to withdraw its admitted responses by construing his opposition as a request for such relief. The presentation-of-the-merits prong of Rule 36(b) is "satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). Here, Defendants' requests, in large part, concern the quality of Plaintiff's work performance, competence, and on-the-job attitude. (*See, e.g.*, Def.'s Req. for Admis. Nos. 5–15, Ex. 1 to MSJ, ECF No. 30-1). One of the requests seeks an admission that Plaintiff's grievance letter "does not contain any allegation of racial discrimination." (*Id.* at No. 24). If such admissions were conclusively established, the Court finds it would significantly hamper each of Plaintiff's causes of action, as he would be foreclosed from introducing any contradictory evidence. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985) ("Evidence inconsistent with a Rule 36 admission is properly excluded.").

Under the second element of Rule 36(b), "district courts should focus on the prejudice that the nonmoving party would suffer at trial." *Conlon v. U.S.*, 474 F.3d 616, 623 (9th Cir. 2007). "The party who obtained the admission has the burden of proving that withdrawal of the admission would prejudice the party's case." *Hadley v. U.S.*, 45 F.3d 1345, 1348 (9th Cir. 1995). Defendants have not specifically articulated any prejudice withdraw would cause, and the Court cannot discern any. Indeed, Defendants have attached over forty exhibits to their Motion, many of which—particularly the declarations of Plaintiff's supervisors—cover the same grounds as the Requests for Admissions.

Based upon the foregoing, the Court declines to deem admitted Plaintiff's unanswered requests. The Court finds that the value of treating this case on the merits, as well as the lack of prejudice to Defendants, weigh in favor of allowing Plaintiff to withdraw his unanswered requests.

### A. Title VII Racial Discrimination[2]

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a)(1). A person suffers disparate treatment in his employment "'when he or she is singled out and treated less favorably than others similarly situated on account of race.'" *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (quoting *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir.1988)).

A plaintiff's prima facie case may be establish based upon the four *McDonnell Douglas* elements or "with direct or circumstantial evidence of discriminatory intent." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003); *see also*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination").

To establish a prima facie case under Title VII, where direct evidence is unavailable, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

---

[2] Plaintiff's discrimination and retaliation claims invoke Title VII, 42 U.S.C. §§ 1981 &1983, and NRS 613.330. Because the employment discrimination standards in § 1981, § 1983 and NRS 613.330 are coextensive with those under Title VII, the Court treats these claims together under Title VII. *See USW Local 12-369 v. USW Int'l*, 728 F.3d 1107, 1118 (9th Cir. 2013) ("The same legal principles that apply to a Title VII claim apply to a claim of race discrimination under 42 U.S.C. § 1981."); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases."); *Gutierrez v. Municipal Court of Southeast Judicial Dist.*, 838 F.2d 1031, *vacated on other grounds* 873 F.2d 1342, 1343 (9th Cir. 1989) ("[T]he requirements for section 1983 claims are the same as those for establishing the underlying constitutional or statutory violations.").

Establishing a prima facie case under *McDonnell Douglas* creates a presumption that the plaintiff's employer undertook the challenged employment action because of the plaintiff's race. *McDonnell Douglas*, 411 U.S. at 802. To rebut this presumption, the defendant must produce admissible evidence showing that the defendant undertook the challenged employment action for a "legitimate, nondiscriminatory reason." *Id.* If the defendant does so, then "the presumption of discrimination 'drops out of the picture'" and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases under Fed. R. Civ. P. 56(c). *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Under Title VII, summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's race. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

### 1. McDonnell Douglas Framework

Defendants do not dispute that Plaintiff satisfies the first and third elements of his prima facie case of discrimination. (Def.'s MSJ 17:2–5). With respect to the second and fourth elements, Defendants contend that Plaintiff did not perform his job satisfactorily and was not treated differently from those similarly situated persons outside of his protected class. (*Id.* 17:13–21:2). However, because Plaintiff adduces direct evidence of discrimination, as discussed below, the Court turns to Defendants' proffered reasons for Plaintiff's termination.

### 2. Legitimate, Non-Discriminatory Reason

Defendants have offered legitimate, non-discriminatory reasons for terminating Plaintiff. Defendants' termination letter provides the following explanations for Plaintiff's termination: (a) Plaintiff did not demonstrate skills, abilities, and other characteristics requisite of the requirements of a compliance audit investigator; (b) Plaintiff displayed an unwillingness to accept instruction or criticism from his supervisor; and (c) Plaintiff has not shown sufficient

awareness of the professional qualities required of a person in his position. (Termination Letter, ECF No. 30-34).

Defendants also point to other evidence in the record supporting the justifications provided in the termination letter. NDOT's human resources director states that poor performance is the "most common reason for NDOT to release an employee from their probationary period." (Wall Aff. ¶ 3, ECF No. 30-45). Prior to Plaintiff's termination, Marshall complained about the quantity of DBE applications Plaintiff had been processing. (Pl.'s Dep. 91:8–23, ECF No. 30-26). Marshall also e-mailed Braih expressing concern over Plaintiff's oral and written communication skills, (Marshall Correspondence, ECF No. 30-22), and expressed those concerns to Plaintiff as well. (Pl.'s Dep. 34:13–23). Defendants have also put forth evidence that Plaintiff was resistant to Braih and Marshall's instructions to take on duties that Plaintiff perceived as administrative. (Pl.'s Dep. 56:6–12).

Defendants further establish that Plaintiff was uncooperative with Marshall, his supervisor, and was resistant to his instructions. Both Marshall and Terry L. emailed Braih about the weekly September 14, 2015 meeting and noted that Plaintiff complained about the workload, expressed sarcasm to Marshall's instruction, and resisted being assigned more duties, (ECF Nos. 30-22, 30-23). Braih also states that during Plaintiff's training period, during which Braih was supervisor, Plaintiff expressed an unwillingness to pay attention to his instructions. Marshall claims that, upon taking over as Plaintiff's supervisor, Plaintiff was disrespectful and avoided communications with him. (Marshall Decl. ¶ 5, ECF No. 30-10).

In sum, Defendants have proffered a legitimate, nondiscriminatory rationale for Plaintiffs' termination. Therefore, Plaintiff can defeat summary judgment by "prov[ing] by a preponderance of the evidence that the legitimate reasons offered by [Defendants] were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (quotation marks and citation omitted).

### 3. Pretext

An employee can prove pretext either: (1) "directly, by showing that unlawful discrimination more likely motivated the employer"; or (2) "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017) (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004)).

"When a plaintiff opposing summary judgment presents direct evidence of a discriminatory motive, we do not assess the direct evidence" within the *McDonnell Douglas* burden-shifting framework. *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015). Additionally, when the plaintiff offers direct evidence, it creates "a triable issue as to the actual motivation of the employer . . . even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

Where a plaintiff is alleging employment discrimination, the plaintiff "need produce very little evidence" to overcome summary judgment because the ultimate question "is most appropriately conducted by a factfinder, upon a full record." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). However, "stray remarks," or comments that are not directed at the employee or tied to the decision-making process, do not constitute direct evidence sufficient to overcome summary judgment. *France*, 795 F.3d at 1173; *see also Magsanoc v. Coast Hotels & Casinos, Inc.*, 293 Fed. App'x 454, 455 (9th Cir. 2008).

Turning to Plaintiff's proffered evidence, Plaintiff points to the following racially insensitive remarks uttered by Marshall:

(1) Marshall stated to Plaintiff that "DBE's that get on a job and can't perform, due to the lack of skill and experience, are no different than what [I] experienced when [I] worked for the Bureau of Prisons, with affirmative action, where [I] would see many women and minorities be escalated through the ranks and fail because they lacked the knowledge and skill level to perform." Marshall allegedly looked directly at Plaintiff when he uttered this comment;

(2) After Plaintiff asked Marshall if he was attending an off-site work-related event, Marshall responded "You used to be the cab driver, why don't you drive me, boy?"; and

(3) On the day of Plaintiff's termination, Marshall said to Plaintiff "this is why you people are so unqualified for these kinds of jobs," to which Plaintiff asked what Marshall meant by "you people," and Marshall responded by looking at Plaintiff and smiling.[3]

(Pl.'s Resp. 3:19–4:19).

Defendant asserts that these comments are stray remarks and are insufficient to establish discrimination. (MSJ 15:27–28). The Court disagrees and instead finds, for purposes of summary judgment, that these comments may be direct evidence of discrimination. First, Marshall's comments about affirmative action programs could demonstrate that Marshall had discriminatory animus against people he perceived as benefiting from such programs. Marshall's comment, "why don't you drive me, boy?" was directed at Plaintiff and has a racial connotation that could lead a reasonable factfinder to infer discriminatory intent. *See Ash v. Tyson Foods Inc.*, 546 U.S. 454, 456 (2006). (finding that use of the term "boy" may be evidence of racial animus and depends on various factors). Furthermore, Marshall's comment about "you people" was also directed to Plaintiff on the day he was terminated. This comment could be understood to demonstrate Marshall's animus toward Plaintiff and ill motives behind his termination. *See E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990) (holding that a comment made about "you people" constituted direct evidence of discrimination); *Abramson v. William Paterson Coll. of N.J.,* 260 F.3d 265, 278 (3d Cir. 2001) ("[W]e have held that even the use of 'code words' such as 'all of you' and 'one of them' could be sufficient evidence from which a jury could find an intent to discriminate.").

---

[3] Defendants point out that this statement was omitted from Plaintiff's responses to Defendants' first set of interrogatories. (Reply 7:26 n.2, ECF No. 42). The allegation however, is in Plaintiff's Complaint, albeit stated in a different temporal context. (*See* Compl. ¶ 13). To the extent Defendants challenge the credibility of this allegation, that question will be left to a jury.

While Marshall did not personally terminate Plaintiff, Plaintiff may still show that Marshall's animus led to his termination. "[T]he plaintiff can establish a causal link by proving that the biased subordinate influenced or was involved in the decision or decisionmaking process." *France*, 795 F.3d at 1776 (internal quotation omitted). Here, Marshall was Plaintiff's direct supervisor, who assigned tasks and handled Plaintiff's work schedule. (*See* Marshall Correspondence, Ex. 22 to MSJ, ECF No. 30-22). Furthermore, Plaintiff alleges that Marshall would conduct his performance evaluations, which in turn could influence the decisionmaker, Braih. (*See* Pl.'s Answer to Interrog. No. 3, Ex. 5 to Pl.'s Resp., ECF No. 35-5).

"While a factfinder is free to conclude at trial that the plaintiff's account is insufficiently detailed to be believable, the district court must refrain from making such credibility assessments on summary judgment. As long as a reasonable factfinder could conclude that discrimination occurred, summary judgment must be denied." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1039 (9th Cir. 2005). Therefore, the Court is hesitant to grant Defendants' Motion because a factfinder could make a reasonable inference that the proffered evidence establishes Plaintiff's termination was motivated by racial animus. *See* Mayes, 846 F.3d at 1280 (finding that three supervisor comments were "ample evidence of discriminatory animus"). Accordingly, the Court denies Defendants' Motion for Summary Judgment on Plaintiff's Title VII racial discrimination claim.

### B. Title VII Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of [its] employees or applicants for employment . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e3(a). To establish a prima facie case of retaliation under Title VII, the plaintiff must establish that: "(1) she engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, (2) the [employer] subjected her to an adverse employment action, and (3) a causal link exists between

the protected activity and the adverse action." *Id.* at 800 (quotation omitted). If the plaintiff establishes a prima facie retaliation claim, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant does so, then the plaintiff "bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Id.* (quotation omitted).

Plaintiff alleges that Defendants retaliated against him in response to his September 11, 2015 in-person complaint to Braih, and in response his Grievance Letters. (Compl. ¶ 28, ECF No. 1); (Pl.'s Answer to Interrog. No. 7, Ex. 5 to Pl.'s Resp., ECF No. 35-5). Plaintiff states that after the September 11, 2015 meeting, Marshall ceased praising Plaintiff's work and began criticizing him on a regular basis. (Compl. ¶ 30). Plaintiff asserts that the Grievance Letters were related to an adverse employment action because he was terminated twenty days later. (*Id.* ¶ 31).

Defendants argue that Plaintiff's Grievance Letters do not constitute protected activity under Title VII because the letters are limited to complaints about Marshall's managerial competence and are silent as to the alleged racial discrimination. (MSJ 24:23–25:14). Defendants also contend that even if the grievance letters are protected, Plaintiff cannot show causation between those and Marshall's subsequent altered demeanor, because Marshall's alleged discrimination pre-dated the letter. (*Id.* 25:15–26:14).

### a. Protected Activity

The Court finds that Plaintiff's Grievance Letters, in conjunction with his in-person complaint to Braih days prior, is protected activity under Title VII. The Unprofessional Office Encounters letter identifies comments Marshall made, beginning with the comment about affirmative action. The letter states:

> Ray made the comparison that "DBE's that get on a job and can't perform, do [sic] to the lack of skill and experience are no different than what he experienced when he worked for the bureau of prison, with affirmative action, where he would see many woman and

> minorities be escalated through the ranks and fail because they
> lacked knowledge and skill level to perform.["]

(Grievance Letters, Ex. 25 to MSJ, ECF No. 30-25).

The letter also refers to Plaintiff's meeting with Braih on September 11, 2015, during which Plaintiff contends the two spoke about Marshall's discriminatory comments. Without addressing the content of Marshall's statement as it appears in the letter, Defendants generally argue that no reasonable person would interpret the Grievance Letters as complaining of unlawful discrimination. Yet, Plaintiff asserts that he put Braih on notice of Marshall's discriminatory comments during the meeting referenced in the letter. If credited by a factfinder, then Plaintiff's Grievance Letters and in-person complaint could be considered protected activities, particularly when viewed in the context of Marshall's other comments to Plaintiff. *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 964 (9th Cir. 2009) ("If a person has been subjected to more than one comment, and if those comments, taken together, would be considered by a reasonable person to violate Title VII, that person need not complain specifically about all of the comments to which he or she has been subjected. Unreported comments, in other words, are relevant to the inquiry concerning the reasonableness of the belief that a violation has occurred.").

### b. Causation[4]

"The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *see also Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("[T]he plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the

---

[4] The Court bypassed the adverse-action prong because it is undisputed.

defendant was aware that the plaintiff had engaged in protected activity."). Additionally, under the "cat's paw metaphor," even if the final decision maker lacked retaliatory intent, the plaintiff can establish the causal link between the protected activity and the adverse action by "proving that [a] biased subordinate influenced or was involved in the decision or decision making process." *France v. Johnson*, 795 F.3d 1170, 1176 (9th Cir. 2015) (quotation omitted).

Here, a reasonable fact finder could find that there is temporal proximity, as Plaintiff's termination came twenty days after his Grievance Letters, and twenty-three days after the in-person meeting with Braih. *See, e.g., Bagley v. Bel-Aire Mech. Inc.*, 647 F. App'x 797, 800 (9th Cir. 2016) (holding a "36-day gap between the protected activity and the adverse employment action" establishes causation for summary-judgment purposes). As to Defendants' knowledge of Plaintiff's protected activities, this element hinges upon a disputed fact, namely the content of the meeting between Plaintiff and Braih. The specificity with which Plaintiff aired his grievances to Braih necessarily determines whether Braih was on notice of Plaintiff's Title VII-related complaints. *See Kitchen v. WSCO Petroleum Corp.*, 481 F. Supp. 2d 1136, 1149 (holding that the plaintiff's "minimal burden" of establishing causation was met by temporal proximity in addition to evidence that the defendants "might have known" about the plaintiff's complaints). Accordingly, this question will be left to a jury.

In summary, Defendants have come forward with legitimate, non-discriminatory reasons for Plaintiff's termination. Because Plaintiff has adduced evidence the Court considers sufficiently direct, a reasonable factfinder could conclude that Defendants' explanations for the termination are unworthy of credence and are, therefore, mere pretext for unlawful discrimination. *See Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001) ("Only a small amount of direct evidence is necessary in order to create a genuine issue of material fact as to pretext."). Defendants Motion for Summary Judgment is therefore denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 30), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file a joint pretrial order within thirty (30) days of this Order's issuance.

**DATED** this __31__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge